(No. 21565.—

FRED RATH *et al.* Appellees, *vs.* HENRY L. DEGENER, Appellant.

*Opinion filed February 23, 1933—Rehearing denied April 13, 1933.*

RATHJE & CONNOR, (WILLIAM A. CANNON, of counsel,) for appellant.

FRANK J. LINK, for appellees.

Mr. JUSTICE ORR delivered the opinion of the court:

Appellant, Henry L. Degener, was made defendant in a bill in equity for specific performance filed by appellees, Fred Rath and Lillian Rath, his wife, in the circuit court of Cook county. Issue was joined and the cause referred to a master in chancery, who recommended that the bill be dismissed for want of equity. Objections to the master's report were overruled and allowed to stand as exceptions. No evidence was offered or received by the chancellor and no order was entered either sustaining or overruling the exceptions. A decree was entered adopting the findings of fact but rejecting the legal conclusions of the master, directing appellant to make certain deeds conveying the premises in question to appellees, and restraining appellant from interfering with possession of appellees and the performance of their agreement. From that decree the present appeal is taken.

The undertaking sought to be enforced was a parol contract for the conveyance of certain real estate owned by appellant in Evanston in return for appellant's support and maintenance by appellees during the remainder of his lifetime. Appellant is a widower eighty-one years old and in better than average mental and physical condition for one of his age. He had no children. The appellee Lillian Rath is his niece. He lived in his eight-room residence in Evanston and owned the two adjoining lots, each improved with two-story apartment buildings. He also owned a twenty-seven-apartment building in Chicago. In October, 1930, appellees owned and resided on real estate in Hinsdale, near Evanston, and were conducting a dairy. At that time appellant requested Rath to come to Evanston and look after certain repairs on his property there and in Chicago. Rath consented and until March, 1931, rendered services to appellant which he claimed were worth $1000. This amount was not paid to Rath but was later merged in the contract over which the dispute arose. While Rath

was doing this work foreclosure proceedings were pending against appellant's Chicago building. About March 1, 1931, after a decree of foreclosure had been entered, appellant suggested to appellees that they purchase the Chicago building, saying that he would decrease the purchase price by the amount of $1000 he owed Rath. On March 23, 1931, a contract of purchase was drawn by appellant's lawyer and signed by appellees, but appellant failed to sign it and carried it away with him after stating that he wanted additional time to think the matter over. On the same day appellant urged appellees to move into his Evanston residence and care for him and his property until he died, saying that if they agreed to do this he would give them the residence property and a one-third interest in the two adjoining properties and the Chicago building. It was then understood that the $1000 debt to Rath was to be merged in this agreement and the contract for the sale of the Chicago building, which appellant had not signed, was to be canceled. This oral agreement to convey was not reduced to writing and is the subject matter of this suit for specific performance. Appellees accepted the proposition offered by appellant, who urged them to dispose of their dairy business in Hinsdale, even at a sacrifice. On June 10, 1931, appellees sold their dairy business for $6500, leased their real estate in Hinsdale for $100 per month for three years and moved into the Evanston residence with appellant, in accordance with their agreement to give him a home for life, pay for all food, take care of him and look after his property. No conveyances of any of his property were ever made by appellant to appellees. The parties continued to dwell together harmoniously for about four months. In November, 1931, appellant told Mrs. Rath that he intended to marry and appellees would have to vacate his residence. This they refused to do upon the theory that he had made them an oral conveyance, later to be evi-

denced by written instruments. Appellant instituted a forcible entry and detainer suit against appellees but was defeated. He then went home and locked the doors and boarded up the windows in order to keep appellees out. Being unsuccessful in this attempt he swore out a warrant against them and they were arrested and taken to the police station. On the hearing the magistrate dismissed the case and said he would not have issued the warrant if he had known the true circumstances.

The sole question involved in this appeal is whether the parol agreement entered into between appellant and appellees is, under the circumstances, capable of enforcement in equity by specific performance. In our judgment it is not. The contract in this case only called for the rendition of personal services by appellees to appellant for the rest of his life. It must be apparent that if the situation were reversed appellant could not maintain a bill for specific performance compelling appellees to render such personal services to him. The rendition of such services might be prevented by the refusal or personal incapacity of appellees to render them or by their death prior to that of appellant. Equity has no means of enforcing such a contract where mutuality of obligation and remedy does not exist. (*Barker* v. *Hauberg,* 325 Ill. 538; *Flannery* v. *Woolverton,* 329 id. 424.) A mere expression of an intention to convey property, which does not culminate in a binding agreement with mutual obligations, is not a contract which can be specifically enforced. (*Cassel* v. *Cassel,* 104 Ill. 361.) Aside from lack of mutuality, equity could not decree a performance in this case that would operate without injustice or oppression upon appellant. Degener is not dead, and it would be oppressive and intolerable to him to make him live with the Raths during the remainder of his life. On the other hand, appellees may be adequately compensated in damages proved and the value of their services in an action at law, as, under the facts here, the Statute of Limitations

offers no bar to their recovery. *Flannery* v. *Woolverton, supra.*

The testimony of appellees fails to show an agreement by appellant to make an immediate conveyance with such certainty and clearness as would enable a court of equity to grant specific performance. The appellee Fred Rath on direct examination stated that appellant said to him: "Listen, Fred and Lillian, I want you up here to help me—to take care of me the rest of my days. * * * I will go to work and give you this home place and give you a one-third interest in the other places." The appellee Lillian Rath related appellant's offer to the effect that "if they would do that he would give her the home place in Evanston and one-third interest in the two adjacent buildings and a one-third interest in the apartment building." From Lillian's statement of the contract the property was to be given to her, while Fred's version shows that he was to receive part, or all, of it. Whether the transfer was to be by deed, trust or devise is not indicated. The testimony throughout does not establish with certainty that appellant had in mind an immediate conveyance to appellees or to either of them. To lend enforcibility to the undertaking the parties must have agreed to the same terms and mutually signified their assent to them. The record shows that appellees at different times had conversations with appellant concerning the property, but, as was held by this court in *Tryce* v. *Dittus,* 199 Ill. 189, "treaty or negotiation, or an expectation of a contract or an arrangement between them of an honorary nature," is not sufficient; and, as further said in *Weir* v. *Weir,* 287 Ill. 495: "The rule is settled in this State that a parol contract for the conveyance of real estate will not be specifically enforced in a court of equity unless it appears to be certain, definite and unequivocal in its terms; * * * that the proof upon which the conveyance is asked must be established so convincingly as to leave no reasonable doubt in the mind of the court." The evidence here does not meet the requirements of the

rule last stated. For this and other reasons above given specific performance must therefore be denied.

The decree of the circuit court of Cook county is reversed and the cause is remanded to that court, with directions to dismiss the bill for want of equity and to adjust and tax the costs in a manner equitable to the parties.

*Reversed and remanded, with directions.*