### (April 14, 1966)

■ ROSEZELLE BUCKINGHAM, Respondent, v. DONARRY REALTY CORP., Appellant, et al., Defendant.

APPEAL from a judgment of the Supreme Court in favor of plaintiff, entered January 13, 1965 in New York County, upon a verdict rendered at a Trial Term.

*Per Curiam.* The plaintiff, a tenant in a basement apartment, brought this action against the landlord to recover for injuries she sustained in exiting from the apartment during the occasion of a fire. She alleges that, since the windows in the apartment were nailed shut, and other means of escape were

lacking, it was necessary to break the glass in a window, and that she sustained serious and painful cuts about her body in the course of going through the window. The case was submitted to the jury solely on the theory that the defendant was negligent in failing to maintain the windows in the apartment in proper repair and, in particular, in the alleged nailing down of the same with the result that the windows were immovable in case of an emergency.

On this appeal the plaintiff argues mainly that the defendant was chargeable with negligence in failing to provide a secondary means of egress from the apartment as allegedly required by sections 142 and 146 of the Multiple Dwelling Law. But it is to be noted that a violation of said sections was not specifically mentioned in plaintiff's complaint or bill of particulars, nor was the case submitted to the jury on any such theory. Consequently, on this record, the statutory violation, if it existed, may not be relied upon by plaintiff as a basis for sustaining the verdict in her favor.

Furthermore, on the basis of the present record, the verdict for plaintiff is not sustainable on alleged theory that the windows were nailed down. The testimony of the plaintiff and her husband tends to support such a verdict, but such testimony, when viewed in light of the entire record, is entitled to little probative value. Significantly, neither the complaint nor the bill of particulars alleged specifically that the windows were nailed. The plaintiff's husband gave a statement shortly after the fire to a representative of another tenant and therein he stated merely that the windows were "stuck", without mentioning the alleged nailing. He testified that he had complained about the windows to the managing agent and to the building owner but, although he was the superintendent of the building, he admitted on cross-examination that he had attempted only to remove the nails from one of the windows, using a crow bar; and, incredibly, he said he did not have a hammer. Furthermore, there was no explanation offered for plaintiff's failure to call as a witness her son who was in the apartment and escaped therefrom at the time of the fire. He was 11 years of age when the fire occurred and 14 years old at the time of the trial, and it is probable that his testimony with reference to the condition of the windows and the means he used to escape from the fire would have been helpful. The evidence bearing on the question of whether the windows were nailed is to be weighed in light of the failure of plaintiff to produce her son as a witness.

"All evidence is to be weighed according to the proof which it was in the power of one side to have produced and in the power of the other side to have contradicted." (*Travelers Ins. Co.* v. *Pomerantz*, 246 N. Y. 63, 69.) Consequently, added weight may be accorded to the testimony of the former superintendent (a disinterested witness), the testimony of the president of the defendant landlord and of its managing agent that the windows were not nailed. Under all the circumstances, a verdict resting on a finding that the windows were nailed is contrary to the greater weight of the evidence and a new trial is required in the interests of justice.

If we were to assume that there is proper support for plaintiff's contention of nailed windows, the question of proximate cause would be one of fact. The necessity for the use of the windows as a means of escape from a fire which blocks an only exit doorway may be found to be reasonably foreseeable, and it cannot be held as a matter of law that reasonable foresight and prudence would not forecast the occurrence of injury as the result of an escape through a broken windowpane. Under the circumstances, the fire was not an intervening act causing the injuries (cf. *Rivera* v. *City of New York*, 11 N Y 2d 856); it was merely the act which set in motion a chain of events during which a condition resulting from the alleged negligence of the defendant intervened to cause injuries which could be found to be foreseeable.

We note, however, that the charge of the trial court pertaining to negligence was most general without explicit guidance with respect to the application of the law of negligence to the facts of the case. Furthermore, the jury was not properly and adequately instructed on the question of proximate cause. These circumstances, even in the absence of specific exception, justify a new trial in the interests of justice. (See *Herbst* v. *Balogh*, 7 A D 2d 530; *Molnar* v. *Slattery Contr. Co.*, 8 A D 2d 95; *Walsh* v. *Wilkie*, 20 A D 2d 634; *Arroyo* v. *Judena Taxi*, 20 A D 2d 888; *O'Connor* v. *595 Realty Assoc.*, 23 A D 2d 69, 72.)

Finally, on the basis of the medical testimony with reference to the scars resulting from plaintiff's injuries, and in view of the proven medical expenses of but $35, loss of wages in the sum of but $180, and estimated costs ($2,000) for plastic surgery expenses, the verdict of $18,000 is grossly excessive.

The judgment entered upon the verdict for plaintiff should be reversed, on the law, on the facts, and in the exercise of discretion, and a new trial should be ordered, with costs and disbursements to abide the event.

Breitel, J. P., Rabin, McNally, Eager and Bastow, JJ., concur.

Judgment unanimously reversed upon the law and upon the facts, and in the exercise of discretion, and a new trial ordered, with $50 costs to abide the result of the final judgment in the action.